SMART *v.* STATE OF INDIANA.

[No. 30,207. Filed June 6, 1963.]

*Clarence R. Mills, Jr.,* of Indianapolis, *Richard H. Miles, John H. Caress* and *McNutt, Hurt & Blue,* all of Martinsville, for appellant.

*Edwin K. Steers,* Attorney General and *Carl E. Van Dorn,* Deputy Attorney General, for appellee.

MYERS, C. J.—This is an appeal from a judgment entered by the Morgan Superior Court, without the intervention of a jury, wherein appellant was convicted of burglary in the first degree and sentenced to not less than ten nor more than twenty years in the State Reformatory.

The affidavit charges appellant, on the 28th day of August, 1961, with unlawfully breaking and entering

into a structure known as the Dr. R. L. Keenan residence, "which was then and there a place of human habitation," located near the town of Mooresville, Indiana, with intent to commit a felony, that is, to steal the personal chattels of Dr. Keenan.

First-degree burglary consists of the breaking and entering into "any dwelling-house or other place of human habitation with the intent to commit any felony therein, or to do any act of violence or injury to any human being, . . . ." Burns' Ind. Stat., §10-701, 1956 Replacement.

We are presented with the question as to whether the building alleged to have been burglarized was within the meaning of the statute on first-degree burglary. To sustain its burden, the State must prove each essential element of the crime charged. Among these is the need to prove beyond a reasonable doubt that the appellant broke and entered into a place of human habitation or a dwelling house.

The building was situated in a rural community. It was a frame cabin of rustic design used as a summer cottage by Dr. and Mrs. Keenan, who had built it in 1953 and 1954. There were three or four rooms, including a bathroom, a picture window and a screened porch. Mrs. Keenan testified that she and her husband lived in Indianapolis, but that they spent a two or three weeks' vacation and week-ends there. At the time of the break-in, the cabin was unoccupied. The only item taken was a small radio.

In his argument for reversal, appellant contends the premises here in question were neither a dwelling house nor a place of human habitation.

It is to be noted that the offense of burglary has been divided into three degrees. The first degree pertains to any dwelling house "or other place of human

habitation," and the penalty upon conviction is imprisonment from ten to twenty years. Burglary in the second degree pertains to breaking and entering into cars, boats, or any building or structure *other than a dwelling house or place of human habitation,* with intent to commit a felony. Penalty upon conviction is imprisonment from two to five years. Burglary in the third degree pertains to breaking into cars, boats, or any building or structure, with intent to commit a misdemeanor, together with the unlawful entry of any enclosed property, for the purpose of stealing growing products and other things. On conviction thereof, punishment is a fine not to exceed $500, with imprisonment on the State Farm not to exceed one year.

The reason for the very stiff penalty for committing first-degree burglary is because of the invasion of one's *home.* A recent annotation in 43 A. L. R. 2d, pp. 834, 835, supplements this explanation, and reads as follows:

> "It is evident that the offense of burglary at common law was considered one aimed at the security of the habitation rather than against property. That is to say, it was the circumstance of midnight terror aimed toward a man or his family who were in rightful repose in the sanctuary of the home, that was punished, and not the fact that the intended felony was successful. Such attempted immunity extended to a man's dwelling or mansion house has been said to be attributable to the early common-law principle that a man's home is his castle. The jealousy with which the law guarded against any infringement of this ancient right of peaceful habitation is best illustrated by the severe penalties which at common law were assessed against a person convicted of burglary, even though the enterprise, except for the essential elements of breaking and entering a mansion house or dwelling house at night with

intent to commit a felony therein, was unsuccess-
ful."

We are of the opinion that the Kennan cabin was
not a "dwelling house" so as to bring it within
that section of the statute pertaining to first-
degree burglary.

However, the statute uses the alternative phrase,
"or other place of human habitation," in connection
with first-degree burglary. This may be distinguished
from "dwelling house" in that the latter expression
refers to a "home" or a permanent or settled residence
house for a family and their personal possessions. It
also connotes a range of sentiment and feeling as-
sociated with it. "*Home* is not a mere synonym for
house." Webster's New International Dictionary, Sec-
ond Edition, page 1122. Writers, poets and sages since
ancient times have used the word "home" with special
significance from the bathos of mawkish sentimental-
ism to the pinnacle of dignified emotion, but always
in contrast to any other place.

The word "place" has been defined as "a portion of
space occupied by a body"; "a building, part of a
building, or other spot, set apart for a special
purpose." Webster's New International Diction-
ary, Second Edition, page 1877. "Habitation"
has been defined as a place of abode; a place to dwell
in. Words & Phrases, Vol. 19, page 25. A person can
have a habitation in one place and yet have his home
in another.

" 'He who stops even for a long time in a place
for the management of his affairs, has only a
simple habitation there, but has no domicile.' "
*In re Thompson*, 1 Wend. 45, as quoted in *Union
Hotel Company* v. *Hersee* (1880), 79 N. Y. 454,
463, 35 Am. Rep. 536.

It has been stated that "habitation" in strict technical terminology is an abode for the moment, although in a broader sense it may be a component part of "residence" and "domicile." *In re Lesker* (1954), 377 Pa. 411, 105 A. 2d 376.

There seems to be a clear distinction between a "dwelling house" which is designated to mean a "home" and a "place of human habitation" which is ██ a temporary abode at a not necessarily specified location. Such a "place" today could be a house used for business purposes, a motel room, an apartment, a fishing shack or a cabin such as was owned by the Keenans. The only difference between a dwelling house and a place of human habitation, in so far as the first-degree burglary statute is concerned, is that when the dwelling house is left empty temporarily by the owner or his family, it still remains a "home" to which they will eventually return, and so a breaking and entering with intent to commit a felony remains first-degree burglary. See Anno., 85 A. L. R. 428. But when a habitation is vacated, even though temporarily, it ceases to be a place where humans make their abode and so becomes a place other than a "place of human habitation." Thus, a breaking and entering of such empty habitation becomes second-degree burglary according to the statute.

In our opinion, if appellant had broken into the Keenan cabin, with the necessary intent, at a time when it was being occupied by them, either during a vacation or over a week-end, this would have constituted first-degree burglary, and the trial court's judgment would have have to be affirmed. As there was insufficient evidence to show this to be the fact, the judgment of the court was contrary to law and must be reversed.

Judgment reversed, with instructions to sustain appellant's motion for new trial.

Achor, Arterburn, Jackson and Landis, JJ., concur.

NOTE.—Reported in 190 N. E. 2d 650.